## United Electric Light Company *v.* East Pittsburg Borough, Appellant.

*Boroughs—Ordinances—Electric light company—Extending time limit fixed by ordinance—Resolutions.*

1. Where a borough by ordinance has granted to an electric light company the right to erect poles and string wires along the borough streets to be exercised within a specified time, the borough cannot subsequently extend the time limit by a mere resolution not presented to the burgess for approval, nor duly recorded and advertised. Such an extension can only be effected by an ordinance; but where the borough has in no way insisted upon a strict compliance with the ordinance as to time, but has only objected that a proper bond has not been filed, the borough will not be permitted to enforce a forfeiture of the grant by removing the poles and wires on the ground that the company failed to observe the original time limit.

2. In such a case where it appears that the electric light company had made continuous efforts in good faith to furnish a bond satisfactory to the borough, the court will restrain the borough from removing the poles and wires, but will require the company to execute and deliver within a time specified the bond required by the ordinance.

*Appeals—Assignments of error—Equity—Exceptions.*

3. Assignments of error to the answers and findings of the trial judge in an equity suit made before the filing of exceptions are improper. Assignments in such a case should be to the final action of the court upon exceptions to the rulings of the trial judge.

Argued Oct. 21, 1910. Appeal, No. 123, Oct. T., 1910, by defendant, from decree of C. P. No. 4, Allegheny Co.,

First Term, 1909, No. 288, on bill in equity in case of
United Electric Light Company v. East Pittsburg Bor-
ough.  Before Fell, C. J., Mestrezat, Potter, Elkin
and Stewart, JJ.  Affirmed.

Bill in equity for an injunction.  Before Swearin-
gen, P. J.

The facts are stated in the opinion of the Supreme
Court.

The final decree of the court was as follows:

And now, April 27, 1910, this cause came on to be
further heard, and was argued by counsel, and upon con-
sideration thereof it is ordered, adjudged and decreed as
follows, viz.:

1. That the borough of East Pittsburg, defendant, its
officers, agents and employees, be and they are hereby
perpetually restrained and enjoined from damaging, de-
stroying or in anywise interfering with the electric light
poles of the United Electric Light Company, plaintiff,
now erected along Terrace and Braddock avenues of East
Pittsburg.

2. That the borough of East Pittsburg, defendant, its
officers, agents and employees, be and they are hereby
perpetually restrained and enjoined from interfering or
attempting to interfere with the United Electric Light
Company, plaintiff, its officers, agents, or employees, in
the erection of electric light poles, or the digging of holes
therefor, along the streets or highways of the borough of
East Pittsburg, or in placing wires or other appliances on
said poles, necessary for the completion of its electric light-
ing system, as provided by ordinances hereinafter men-
tioned.

3. That the United Electric Light Company, plain-
tiff, shall, on or before June 1, 1910, make, execute, and
deliver to the borough of East Pittsburg and its successors,
a trust company bond in the sum of $3,000, conditioned
for the faithful performance of all the conditions of Or-
dinance No. 243 of said borough, approved July 31, 1907,

as amended by Ordinance No. 252 of said borough, approved January 4, 1908.

4. That the borough of East Pittsburg, defendant, shall pay the costs of this proceeding.

*Errors assigned* were (1–36) various findings of fact and conclusions of law; (37) the final decree of the court as above, quoting it.

*Joseph F. Mayhugh,* for appellant.—An ordinance cannot be amended by a mere motion. Nor can it be amended by a resolution, unless that resolution is passed with all the solemnities and legal requirements incident to the passage of ordinances: Winton Boro. v. Mulhern, 3 Lack. L. N. 264; Jones v. Light Co., 202 Pa. 164; Sower v. Phila., 35 Pa. 231; Howard v. Swissvale Boro., 52 Pittsburg L. J. 260.

If the work was not completed and the company was not ready to furnish light to the residents of East Pittsburg borough on or before August 13, 1908, the time limit of said ordinance, and if the defendant is right in its contention that said time limit was not extended, but expired on August 13, 1908, the plaintiff's case fails: Keystone State Tel. & Tel. Co. v. Ridley Park Boro., 28 Pa. Superior Ct. 635; Allegheny City v. Ry. Co., 159 Pa. 411; Plymouth Twp. v. Ry. Co., 168 Pa. 181.

The condition as to the bond was not complied with: Lewistown Boro. v. Telephone Co., 10 Pa. Dist. Rep. 562; Freeport Water Co. v. Freeport City, 180 U. S. 587 (21 Sup. Ct. Repr. 493).

*Joseph A. Langfitt,* with him *H. W. McIntosh,* for appellee.—Forfeiture is not a favorite of the law. Acquiescence in acts inconsistent with it will readily dispense with a right to claim it: Lauman v. Young, 31 Pa. 306.

The action of counsel in passing the resolution was ministerial or administrative in character, and not legislative, and hence did not require the approval of the burgess: Com. v. National Bank, 9 Pa. Superior Ct. 118; Shaub v.

Lancaster, 156 Pa. 362; Jones v. Light, etc., Co., 202 Pa. 164.

The acts of the appellant amounted to a waiver of the conditions of said contract by implication, and in the light of the said resolution of June 9, particularly a waiver of the one year limitation: Newport News v. Potter, 122 Fed. Repr. 321; Messenger v. Buffalo, 21 N. Y. 196; Randolph County v. Post, 93 U. S. 502; Bradford v. Tel. & Teleg. Co., 206 Pa. 582; Beadles v. Smyser, 209 U. S. 393; Jordan v. Ry. Co., 25 Pa. Superior Ct. 564; Phila. v. Gilmartin, 71 Pa. 140; Ephrata Water Co. v. Ephrata Boro., 16 Pa. Superior Ct. 484.

OPINION BY MR. JUSTICE POTTER, January 3, 1911:

This is a proceeding in equity by the United Electric Light Company against the borough of East Pittsburg, Allegheny county. The complainant sought to restrain the borough from interfering with its electric light poles erected, and to be erected, along the borough streets and from interfering with the completion of its electric lighting system. From the findings of fact by the court below it appears that the plaintiff company was merged with the East Pittsburg Electric Light Company, and succeeded to all the rights, powers and privileges of that company. That by ordinance approved July 31, 1907, the borough of East Pittsburg granted to the East Pittsburg Electric Light Company, its successors or assigns, the right to erect poles and string wires along the streets and highways of the borough for the purpose of supplying light, heat and power to the public. The grant was made upon certain terms and conditions, among which were that the corporation should place its poles and other appliances in such manner and location as the street committee or the borough engineer should designate; that it should compensate the borough for the occupation of its streets and pay an annual license of $1.00 per pole and $2.00 per each mile of wire; that at the time of the acceptance of the ordinance, it should file a trust

company bond in the sum of $3,000, conditioned for the faithful performance of all the conditions of the ordinance; before entering upon the streets it should pay to the said borough the sum of $500; that the ordinance should not be in effect until accepted in writing within thirty days from the date of passage; that unless the corporation should be ready to furnish electricity to the residents of said borough within one year from the date of the acceptance, the ordinance should become null and void and the bond forfeited.

On August 13, 1907, the Electric Light Company accepted the ordinance and sent the borough a trust company bond for the amount required. The bond was not approved, and on September 5 was returned to the company. Various propositions and counterpropositions with regard to the form of the bond were submitted, but the company and the borough were never able to agree upon a form of bond mutually satisfactory, and no bond submitted by the company has as yet been approved by the borough. On May 18, 1908, the company wrote the borough that it was ready to begin the construction of its pole lines, and inclosed a certified check for $500 in payment of the amount stipulated in the ordinance to be paid before it should enter on the streets. This money was accepted, and has been retained by the borough. About May 25, upon request of the company, the street committee of the borough council went over the streets with the company's president, and located the places for the poles. Some ten days later, the borough engineer went over the lines, set stakes and made a plan. In June the president of the company reported to some of the members of council that negotiations were in progress with another light company for the use of poles which had already been erected in the borough, which negotiations if successful would avoid the necessity of erecting additional poles in the streets. He therefore requested an extension of time for the completion of the work of construction. In response to this request, on June 8, at

its regular meeting council adopted a resolution giving the company an extension of ninety days on its ordinance. This resolution was never presented to the burgess for approval nor was it published as ordinances are. The company was notified by the president of council that the resolution had been adopted.

The court below finds as a fact that between June 9 and August 13, there was ample time to have finished the construction of the plant, but relying on the extension of time by the borough council, the company delayed work until after the latter date. About October 25 the company began the work of erecting its poles, and was nearly through with it, when upon November 3, it was notified by the secretary of council that the poles were being illegally placed, because no bond had been filed; and notice was given to remove the poles within ten days.

Upon the facts as found by the court below an injunction, as prayed for, was awarded against the borough and its officers, restraining them from interfering with the electric light company in the erection of its poles; but requiring the complainant to execute and deliver to the borough a bond in the sum of $3,000, in accordance with the requirements of the ordinance. From this decree the borough has appealed, and its counsel has filed thirty-seven assignments of error, all of which except the last are informal in that they do not show the action of the court below upon any exceptions to its rulings. The assignments should be to the final action of the court upon exceptions to the rulings of the trial judge. Each assignment should show an exception filed, and the disposition made of it by the court. In the present case all the assignments except the thirty-seventh are to the answers and findings of the trial judge made before the filing of exceptions; and the answers thus made are not, under equity rule 67, assignable for error. The thirty-seventh assignment is however to the final decree of the court below, and under it the questions raised by this appeal may be considered.

The first matter urged upon us is that the work authorized by the ordinance was not completed within the time limit fixed. This period expired August 13, 1908, and unless there was a valid extension of the time, or a waiver on the part of the municipality, the privileges granted by the ordinance became void. We do not agree with the court below, in its statement that time was not essential to the grant. Extending the time limit fixed by the ordinance, was in the nature of an amendment, and this can only be properly made by the passage of another ordinance, in a formal way. "In general, power to amend a by-law or ordinance is to be exercised in the same mode as power to enact. . . . An ordinance cannot be amended by mere resolution or motion, but only by another ordinance enacted with like formality as the original ordinance:" 28 Cyc. L. & Pr. 380, 381. And in a note to the above it is said: "Thus an ordinance cannot be amended, repealed or suspended by an order or resolution or other act by a council of less dignity than the ordinance itself." "An ordinance cannot be amended or repealed by resolution which is usually recognized as a law of inferior grade:" 2 Abbott on Mun. Corp. (1906), sec. 548, p. 1362. "An ordinance can be amended only by an ordinance and not by resolution; only by an act of the same grade:" 1 Smith on Mun. Corp., sec. 543. "It is well settled that an ordinance cannot be repealed or amended or suspended by a resolution:" People v. Latham, 203 Ill. 9, 23; Chicago, etc., Ry. Co. v. Salem, 166 Ind. 71, 76; Cascaden v. Waterloo, 106 Iowa, 673, 682. But in its final conclusions of law the court below does not rest on the ground that the borough council had the power to extend the time limit by resolution not presented to the burgess for approval, nor duly recorded and advertised, but says that: "by reason of the acts of the defendant and the circumstances, which are set forth in the findings of fact, the defendant is estopped from interfering with the rights of the plaintiff."

We are satisfied from a careful examination of the evi-

dence that throughout the controversy, the borough was not insisting upon a strict compliance with the ordinance as to time, but its chief contention was as to the bond. When the electric light company accepted the ordinance in August, 1907, it accompanied its acceptance with a bond which unquestionably was prepared and tendered by it in good faith as a compliance with the condition of the ordinance. This bond was, on August 19, presented to the council along with the acceptance, and was referred to the borough solicitor. On September 3, the solicitor made an unfavorable report on the bond and it was returned to the company. On September 10, the company wrote the secretary of the council, requesting that the borough solicitor draw up a bond in a form satisfactory to council, and saying that such bond would be properly executed and filed. On November 14, the company wrote directly to councils repeating the request and expressing its anxiety to have the matter of the bond definitely determined. On November 23, the secretary of council wrote to the light company suggesting an interview between its representatives and the solicitor to discuss the form of bond to be given. On December 2, an ordinance was adopted by council amending the former ordinance which was approved by the burgess on January 4, 1908, and recorded January 7. Subsequently the borough solicitor, after consultation with a representative of the trust company that was to be surety, prepared a bond which was executed and presented on May 18 to the council, together with a check for the $500 cash payment required by the ordinance. The check was accepted and the money held by the borough up to the date of the trial, when it was tendered in court to the plaintiff company. The bond was referred to the borough solicitor, who was not the same person as the solicitor who had drawn the form, a change having taken place in the office. The new solicitor disapproved the bond, and it was not accepted.

Prior to June 9, the president of plaintiff company re-

quested of several members of council an extension, and in pursuance of this request the resolution of June 9 was adopted, granting an extension of ninety days. Meanwhile the street committee, acting under authority of a resolution of council, had gone over the streets with the president of the company and located the poles. The resolution provided that "they withhold placing the poles until the bond is approved," and the president was informed of this proviso, and also notified not to put in the poles until councils had passed on the report of the committee. Nothing further appears to have been done until November 2, when the president of the company appeared before council and discussed the question of the bond. He offered at that time to furnish a personal bond in five times the amount required for a trust company bond. The minutes of the meeting state, "He contended that council had granted a 90 day extension of time, and that the street committee had gone over the borough and located their poles." There does not appear to have been any exception taken to this claim, but later in the meeting council adopted the following resolution: "The matter of this company setting up its poles in Terrace avenue and Braddock avenue, before filing its bond, was discussed. It was moved and seconded that the East Pittsburg Electric Light Company be notified to remove its poles from the streets in ten days. Motion carried." It seems that the members of the street committee knew of the work when it was being done, and consulted with the men engaged from time to time as to the details, and made no objection to the erection of the poles as they were going up. On November 3, in accordance with the direction of council, its secretary wrote to the light company notifying it of the demand of council for the removal of the poles, upon the ground that the trust company bond had not been filed. In this letter no claim was made that the time limit had expired, but the notice was based entirely upon the failure to file the bond. Nowhere in the evidence do we find an expression of any intention upon

the part of the borough to claim a forfeiture of the grant because of a failure to complete the work within the time limit. We agree with the trial judge that under the facts as shown, it would be inequitable to permit the borough to enforce a forfeiture of the grant by reason of the failure to observe the original time limit. In Dillon on Mun. Corp. (4th ed.), sec. 417, note 2, it is said: "Any positive acts (infra vires) by municipal officers which may have induced the action of the adverse party, and where it would be inequitable to permit the corporation to stultify itself, by retracting what its officers had done, will work an estoppel."

In the present case, as we have seen, a resolution was passed by council extending the time for the completion of the work ninety days, and the company was notified by the president of council of the passage of the resolution. This extension was granted not merely to favor the company, but in the expectation that it would afford time to effect an arrangement which would avoid the necessity of placing so many poles upon the streets. Aside from the question of the effect of the resolution as an alteration of the ordinance, we regard it as an act inconsistent with the supposition that the borough council intended to hold the company to a strict compliance with the time limit fixed by the ordinance. "Where time of performance is of the essence of the contract, a party who does any act inconsistent with the supposition that he continues to hold the other party to this part of the agreement, will be taken to have waived it altogether:" 29 Am. & Eng. Ency. of Law (2d ed.), 1104. Had there been no dispute over the bond, it does not appear that the borough would have raised any question as to the time limit for the performance of the work.

As to the matter of the bond, the appellees seem to have made every reasonable effort to comply with the condition of the ordinance requiring it to furnish a "trust company bond" in the sum of $3,000. It procured and tendered such a bond to the borough. When that bond

was not accepted, the company requested the borough to have its own solicitor draft a bond which would be satisfactory to council. After considerable delay, this was done, and the borough solicitor drafted a form of bond which was executed by the company and filed with the borough council. But meanwhile a new borough solicitor had been appointed, and he disapproved of the form of bond which had been prepared by his predecessor, and drafted a different form which the surety companies refused to execute. The president of the company then offered to give a bond for a very much larger amount, if individual sureties would be accepted; this proposition was, however, rejected.

The decree of the court below provides for the execution and delivery of a bond conditioned as required by the ordinance and its amendment. The court will see that the bond so executed is in proper form, and the rights of the appellant in this respect will be fully protected. The assignments of error are dismissed, and the decree of the court below is affirmed at the cost of appellant.