# Richmond

## JOHN MARSH, ET AL. v. GAINESVILLE-HAYMARKET SANITARY DISTRICT.

June 11, 1973.

Record No. 8119.

Present, All the Justices.

*Terrence Ney; A. Hugo Blankingship (Boothe, Prichard & Dudley,* on brief), for plaintiffs in error.

*F. Caldwell Bagley,* County Attorney for Prince William County *(Jack B. Darragh,* Assistant County Attorney for Prince William County, on brief), for defendant in error.

COCHRAN, J., delivered the opinion of the court.

Appellants, landowners in Gainesville-Haymarket Sanitary District of Prince William County, challenge the validity of a final order entered by the trial court on March 24, 1972, which purported to enlarge the Sanitary District to include the Town of Haymarket solely for the purpose of receiving water or sewer services or both.

Proceeding under the provisions of §§ 21-113[1] and 21-116[2] of the Code, the Board of Supervisors of the County and certain qualified voters of the Town of Haymarket filed petitions to enlarge the Sanitary District to include the Town. The petition of the Board of Supervisors sought to include the Town without any express reservations. Attached to this petition, however, was a resolution adopted by the Town Council of the Town of Haymarket at a special called meeting held on October 22, 1971, approving the proposed enlargement but concluding with the following provision:

". . . It is further understood that the above action does not relinquish any sovereign rights except water and sewer of the Town of Haymarket."

A similar limitation was included in the petition filed by the qualified voters.

Appellants intervened in opposition to the proposed enlargement, and a public hearing was duly held on December 29, 1971, in compliance with Code § 21-114. Appellants attacked the resolution of the Town Council as being invalid, because the special meeting at which it was approved was not properly called as required by law. They further contended that the Town Council could not limit the inclusion of Haymarket in the Sanitary District for water and sewer services only. The trial court ruled against them on both grounds.

We will assume, without deciding, that the trial court did not err in ruling that the special meeting of the Town Council held on October 22, 1971, at which the resolution was adopted, sufficiently complied with all procedural requirements. We make this assumption because we conclude that the trial court erred in its ruling on the more significant substantive question.

---

[1] Code § 21-113 (Supp. 1971) provides in pertinent part as follows:

\* \* \* \*

"With the approval of the board of supervisors of a county and the council of any town therein, such town or any part thereof may be included within a sanitary district created or enlarged under the provisions of this chapter."

[2] Code § 21-116 (Supp. 1971) provides in pertinent part as follows:

"The circuit court, or the judge of such court in vacation, upon the petition of the governing body of the county and of twenty-five per centum of the qualified voters, if any, residing within the limits of the territory proposed to be added, may make an order extending the boundaries and enlarging any sanitary district created under the provisions of this article, which order shall prescribe the metes and bounds of the territory so added."

\* \* \* \*

The trial court drew an analogy between a sanitary district contracting with a municipality to provide services by making connections with other systems, as permitted by Code § 21-118(8), and a municipality becoming a part of the district for limited purposes. But the broad contractual powers expressly granted to sanitary districts and to municipalities tend to negate rather than to affirm the authority to impose terms and conditions on the entry by a town into a sanitary district. Thus under § 21-118.4(h), as amended in 1970, the governing body of the sanitary district is authorized "[t]o contract for the extension of any such system into territory outside of the district, and for the use thereof, upon such terms and conditions as the board may from time to time determine upon." Municipal corporations are empowered to contract with others for water and sewer services. Code §§ 15.1-875, -876 (Repl. Vol. 1964).

These statutes, therefore, prescribe a method whereby a municipality, without impairing its sovereignty, may obtain limited services from a sanitary district. Appellants and appellee conceded before us that the Town of Haymarket could contract with the Sanitary District to obtain the limited services desired, and appellee offered no explanation why this procedure was not followed.

As creatures of statute, sanitary districts function within the ambit of powers conferred by the General Assembly. Their organization, management, purposes and powers are delineated in Chapter 2, "Sanitary Districts", of Title 21 of the Code. From time to time the powers vested in the boards of supervisors that constitute the governing bodies of sanitary districts have been broadened by statutory amendment. The governing bodies are now authorized to engage in extensive activities in addition to those relating to the furnishing of water and sewer service. *See* Code §§ 21-118 to -118.4 (Repl. Vol. 1960 and Supp. 1971).[3] Moreover, sanitary districts constitute special taxing

[3] For example, Code § 21-118.4 empowers the governing body, among other things:

\* \* \* \*

"(a) To construct, reconstruct, maintain, alter, improve, add to and operate motor vehicle parking lots, water supply, drainage, sewerage, garbage disposal, heat, light, power, gas, sidewalk, curbs, gutters, streets and street name signs and fire-fighting systems, for the use and benefit of the public in such sanitary district and as to such motor vehicle parking lots systems to make such charges for the use of such facilities as may be prescribed by said board or body.

"(a1) To acquire, construct, maintain and operate, or to contract for such acquisition, construction, maintenance and operation, within such sanitary district, such community buildings, community centers and other recreational facilities as the board may deem expedient or advisable, and to make such charges for the use of such facilities as may be prescribed by the board."

\* \* \* \*

districts for the purposes for which they are created. *Id.* § 21-119 (Repl. Vol. 1960). And detailed provisions set forth the requirements for financing projects through the issuance of sanitary district bonds. *Id.* § 21-122 *et seq.*

Appellee concedes that there is no specific statutory authority for including a town in an enlarged sanitary district for limited purposes. It maintains, nevertheless, that in the absence of express statutory prohibition this result may be achieved. We do not agree.

The powers of sanitary districts are restricted to those specifically granted rather than unlimited except for those specifically prohibited. This is implicit in our most recent construction of this statute as applied to contractual rights. *Armstrong* v. *County of Henrico*, 212 Va. 66, 74-75, 182 S.E.2d 35, 40-41 (1971). A sanitary district, as appellee observes, is a limited purpose corporation. But within its jurisdiction its governing body has authority to exercise any and all powers vested therein by statute to effectuate the purposes for which the district exists. Appellants do not contend that a municipality, as part of a sanitary district, must *utilize* all the services available, but they insist that it must *enter* the district unconditionally. We agree.

In the absence of an affirmative expression of legislative intent, we conclude that there is no implied authority for a town to receive the benefit of limited services by conditional entry into a sanitary district. Thus the Town of Haymarket has attempted to legislate in contravention of the enabling statute. Such action is impermissible. *City of Roanoke* v. *Land*, 137 Va. 89, 92-93, 119 S.E. 59, 60 (1923); *see also City of Lynchburg* v. *Dominion Theatres*, 175 Va. 35, 42, 7 S.E.2d 157, 160 (1940). Accordingly, we hold that the resolution of the Town Council of October 22, 1971, is void. Having reached this conclusion, it is unnecessary to consider the appellants' further contention that the resolution denies them equal protection of the law in violation of the Fourteenth Amendment to the United States Constitution.

*Reversed and final judgment.*